UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONNIE GENE BUSH

           Petitioner,

  v.

EDDIE YLST, Acting Warden, San Quentin State Prison

           Respondent.

                                    /

No. C 06-07255 MHP

**MOTION TO DISMISS; REQUEST FOR IMPOSITION OF SANCTIONS**

    Petitioner Ronnie Gene Bush ("Bush"), a California prisoner now incarcerated at San Quentin State Prison, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. section 2254. His petition is now before the court for review pursuant to 28 U.S.C. section 2243 and Rule 4 of the Rules Governing Section 2254 Cases.

    Jurisdiction to address a petition for writ of habeas corpus exists in the district of incarceration and in the district of conviction. 28 U.S.C. § 2241(d). Although venue may be proper in either district, when a prisoner challenges the execution of his sentence rather than the underlying conviction or sentence itself the petition is preferably heard in the district where the prisoner is confined. Campbell v. Mendoza-Powers, No. C06-5544 SI, 2006 WL 3050856 at *1 (N.D. Cal. October 20, 2006) (Illston, J.). Venue lies in this district because petitioner is confined in this district, in Marin County.

BACKGROUND[1]

    In 1984 petitioner Ronnie Gene Bush was convicted of conspiracy to kidnap for ransom or extortion and attempted kidnapping for ransom or extortion in violation of sections 182, 209, and

664 of the California Penal Code.  Following his conviction, Bush was sentenced to life imprisonment with the possibility of parole, with his minimum eligible parole release date set as September 5, 1992.  After that date, the Board of Prison Terms ("the Board") was required to assess Bush's parole eligibility periodically in accordance with the criteria set forth in California Penal Code section 3041(a).

The Board held a series of parole eligibility hearings between June 25, 1991 and March 5, 2003 and determined seven times that Bush was ineligible for parole.  After the fifth denial, on November 17, 1999, Bush filed a writ of habeas corpus in Monterey County Superior Court.  In granting Bush's petition, the Superior Court concluded that the Board's arbitrary and unreasonable application of Penal Code section 3041(a) violated Bush's right to due process of law.  Accordingly, the court ordered the Board to hold another parole hearing that "comports with due process."

On December 20, 2001 the Board held a sixth evidentiary hearing in response to the Superior Court's order.  However, the Board again found Bush to be ineligible for parole, concluding that he would pose an unreasonable risk to public safety if he were released from prison.  In response to the Board's decision, Bush moved to modify the Superior Court's writ of habeas corpus to order his immediate release on parole, arguing, *inter alia*, that the Board's findings at the December 2001 hearing were not supported by the evidence in the record.

On July 3, 2002 the Monterey County Superior Court issued an order granting Bush's request to be released on parole, concluding that "the Board's readiness to make findings so at odds with the record supports [Bush's] claim that his parole hearing was a sham."  The Board appealed, and on May 30, 2003 the California Court of Appeal issued an unpublished opinion reversing the trial court's order.  See In re Bush, No. H024715, 2003 WL 21246781 (Cal. Ct. App. May 30, 2003).  Specifically, the Court of Appeal held that the lower court failed to give the Board's findings the deference that was warranted under the some evidence standard of review that California courts apply in reviewing parole determinations.  The Court of Appeal cited the threats of violence that accompanied Bush's criminal offense, his past criminal history, evidence that Bush lacked true remorse for his crimes, and Bush's failure to make plans for post-release employment as facts that

1  were capable of supporting a finding that his release on parole was inappropriate under California
2  law. See id. at *19–28.  Thus, without explicitly addressing Bush's federal constitutional claims, the
3  Court of Appeal held that the Board did not abuse its discretion in denying Bush parole at the
4  December 2001 hearing. Id. at *28

5  Following the summary denial of Bush's petition for review by the California Supreme
6  Court, Bush filed a petition for relief under 28 U.S.C. section 2254 with this court on May 7, 2004.
7  In his petition, Bush asserted that the Board's December 2001 decision denying him parole violated
8  his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  Based
9  on these allegations, Bush requested that the court order his immediate and unconditional discharge
10 from state custody, or, in the alternative, that it issue an order compelling the Board to hold a new
11 hearing to determine his parole eligibility.

12 Meanwhile, on July 27, 2004, Bush appeared before the Board at his eighth parole eligibility
13 hearing, from which the instant habeas petition arises.  At that hearing, the Board found Bush
14 suitable for release on parole and, upon calculating his release date, it determined that he had been
15 eligible to be released from prison in 1997, seven years before the date of the hearing.  That decision
16 became final on November 15, 2004.  Nevertheless, at that time, the Board did not act upon its own
17 finding of suitability.  Bush filed another petition for writ of habeas corpus in Marin County
18 Superior Court seeking his immediate release from custody.  On March 15, 2005, the Marin County
19 Superior Court granted that petition and ordered the Board to release Bush on parole.  See Pet.'s
20 App. D at 4.  Bush subsequently filed a motion with the Marin County Superior Court seeking a
21 modification of this order which would grant him outright release rather than release on parole.[2]
22 This motion was denied on August 4, 2006. See Pet.'s App. E.

23 Bush was released from state custody on parole under high control supervision on March 19,
24 2005.  Pet. at 6–7.  Given Bush's release, on July 1, 2005 this court issued an order dismissing
25 Bush's May 7, 2004 habeas petition without prejudice due to lack of exhaustion of state claims.
26 While Bush had premised his claimed entitlement to release without parole on the same legal
27 theories that he asserted in state habeas proceedings, California courts had never had the opportunity
28

3

1  to consider the merits of Bush's constitutional claims in light of the Board of Prison Terms' July
2  2004 suitability finding, nor had the state courts had the chance to consider the relationship between
3  the federal rights that Bush asserted in his federal habeas petition and the state interests that are
4  protected by the parole system.
5        Bush filed another habeas petition with this court on November 22, 2006. In it, Bush
6  challenges the Board's July 27, 2004 decision to place him on parole rather than to release him
7  outright. To this end, he argues that at the time of the Board's parole eligibility decision he had
8  already served twenty years in actual custody, seven-and-one-half-years longer than the twelve-and-
9  one-half-year term the Board had assessed. Pet. at 5–6. Bush, therefore, argues that he is entitled to
10 seven-and-one-half-years of excess custody credit, id., which must be applied to any parole term he
11 is assigned per California Code of Regulations section 2345 and California Penal Code sections
12 2900 and 2900.5. Pet. at 7:12–15 (citing interpretations of the relevant statutes in McQuillion v.
13 Duncan, 342 F.3d 1012 (9th Cir. 2003); In re Randolph, 215 Cal. App. 3d 790 (1989); In re Reina,
14 171 Cal. App. 3d 638 (1985); In re Ballard, 115 Cal. App. 3d 647 (1981)).
15       Bush additionally contends that he is entitled to a number of good conduct credits. Though
16 Bush does not clearly state in his petition the exact number of good conduct credits to which he
17 believes he is entitled, he does at various times note that the total number of excess custody and
18 good conduct credits he had accumulated at the time of his release to be either greater than fifteen or
19 greater than sixteen. See Pet. at 2:17–19 ("at the time of his release . . . [Bush] had excess credits of
20 more than fifteen . . . years"); id. at 4:10–13 ("[T]he ruling by the superior court fails to give any
21 lawful reason as to . . . what happens to the more than sixteen . . . years of combined custody and
22 conduct credits that he had by the time that he was released."). Even assuming the lesser of the two,
23 however, Bush argues that when added to the aforementioned excess conduct credits the total
24 number of credits to which he was entitled far surpassed any term of parole the Board was permitted
25 to assign him. See id. at 7. Bush asserts that because the Board assessed only a twelve-and-one-
26 half-year term and California Penal Code section 3000(b)(2) sets a maximum five year period of
27 parole for his offense, his twenty-nine years' worth of time served and various credits precluded the
28

4

1 Board from assigning any parole period whatsoever. See Pet. at 4:23–25.

2 Bush argues that the Board violated his federal due process rights, state law, and the Board's own regulations, id. at 4:20–22, and appears to also allege that the Board violated his federal rights to equal protection under the law by failing to account for his custody credits and by depriving him of state procedures which were created for the benefit of a class of which he is a member (i.e., state prisoners who are later paroled). See id. at 4:1–9 (invoking Evitts v. Lucey, 469 U.S. 387, 393 (1985) and Griffin v. Illinois, 351 U.S. 12, 20 (1956) for the proposition that when a state adopts procedures applicable to a class, any member of the class is entitled to the benefit of those procedures). Bush seeks to be released on his own recognizance or alternatively on reasonable bail. Pet. at 8:20–23.

On December 1, 2006 in connection with his habeas petition, Bush moved for an expedited hearing schedule to be set as his current sentence for parole violations will be completed in April 2007.[3] Pet. at 8:24–27. In light of Bush's concerns that he could endure further irreparable harm through his confinement, this court issued an order granting this motion on February 15, 2007. The court ordered the respondent ("Ylst") to file an answer, conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, within fourteen days. Ylst filed no answer, but instead filed a motion to dismiss on February 28, 2007, within the fourteen day window mandated by the court.

Ylst's motion is premised on Bush's failure to exhaust his state remedies. Therefore, the instant round of pleadings implicate Bush's activities in the state courts that occurred prior to his filing for habeas in this court. These activities include (1) the Marin County Superior Court's issuance of its August 4, 2006 order, (2) Bush's filing, and the court of appeal's subsequent denial of a habeas petition with the court of appeal, and (3) the California Supreme Court's denial of Bush's habeas petition with that court. Ylst argues that Bush continues to have state remedies available because (1) Bush concedes that he could file a petition for relief in Marin County Superior Court but he has declined to do so, (2) the California Supreme Court did not reach the merits of Bush's claims because his petition was denied for procedural reasons, and (3) Bush cannot validly claim that he should be excused from seeking relief in the superior court on grounds of futility.

5

On March 2, 2007 Bush filed a timely opposition to Ylst's motion to dismiss. In his motion Bush asserts that the superior court already ruled on the merits of his petition. Bush argues that although the court of appeal denied his petition with leave to re-file in the superior court, this does not mean that he was required to do so. Bush claims that the superior court had made clear that it would not rule favorably on his petition "no matter how [Bush's claim] was packaged or fashioned." Pet.'s Opp. at 2. Under these circumstances, Bush argues he had no obligation to pursue a remedy in the superior court. Bush further argues that the California Supreme Court necessarily evaluated the merits of his petition because it instructed Ylst to file an answer addressing the petition's merits. In addition to opposing Ylst's motion to dismiss, Bush requests that this court impose sanctions on Ylst, claiming that Ylst's motion was filed to cause unnecessary delay in violation of Federal Rule of Civil Procedure 11. Pet.'s Opp. at 5.

LEGAL STANDARDS

    I.    Motion to Dismiss

A motion to dismiss will be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco, 792 F.2d 1432, 1435 (9th Cir. 1986), cert. denied, 479 U.S. 1064 (1987). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

## II. Exhaustion

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1218 (1996), any person "in custody" pursuant to the judgment of a state court may seek a writ of habeas corpus in federal district court on the ground that he or she is being held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA also provides that "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." Ngo v. Woodford, 403 F.3d 620, 627 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(b)(1)(A)) (original alterations omitted); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). To satisfy this requirement, the petitioner must either (1) fairly and fully present each federal claim to the state's highest court or (2) prove that presenting such a claim would be futile because there is no state remedy available. Insyxiengmay v. Morgan, 403 F.3d 657, 668 (9th Cir. 2005) (citing Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996)).

Under Ninth Circuit law, a claim is fully and fairly presented to a state court only if it is presented to the proper forum through an appropriate procedural vehicle and the petitioner informs the state court of the factual and legal bases for the claim. Insyxiengmay, 403 F.3d at 668 (citations omitted). Therefore, only if the highest state court available was alerted to the fact that petitioner was asserting federal constitutional claims are those claims exhausted. See Crotts v. Smith, 73 F.3d 861, 865 (9th Cir. 1996). "[M]ere similarity of claims is insufficient to exhaust." Johnson, 88 F.3d at 830. The exhaustion requirement does not demand repetitious application to the state courts; a petitioner need present his claims only once and need exhaust only one avenue of relief. See Turner v. Compoy, 827 F.2d 526, 528 (9th Cir. 1987). California requires the presentation of a claim to the California Supreme Court via petition for discretionary review before state remedies are considered exhausted. Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999).

Constitutional claims have not been fairly presented to the state courts and therefore are not exhausted if, for example, the claims in the federal petition and those presented to the state courts (1) arose under different federal constitutional provisions (including different clauses in the same constitutional amendment, e.g. the due process and equal protection clauses of the Fourteenth Amendment), see Brown v. Cuyler, 669 F.2d 155, 159 (3d Cir. 1982), (2) arose under the same constitutional provision but are logically distinct or are based on different and unrelated lines of precedent, see Anderson v. Harless, 459 U.S. 4, 6 (1982); Hudson v. Rushen, 686 F.2d 826, 830 (9th Cir. 1982), or (3) one claim relied on state law while the other relied on federal law, even if the state and federal provisions are facially identical, see United States ex rel. Fitzgerald v. Jordan, 747 F.2d 1120, 1126–27 (7th Cir. 1984).

### III.  Sanctions

Under Rule 11 of the Federal Rules of Civil Procedure, an attorney's signature constitutes a warranty that a pleading or motion is not "being presented for any improper purpose, such as to harass or to cause unnecessary delay." Fed. R. Civ. P. 11(b)(1). Rule 11 requires both notice and an opportunity to respond to violators of the rule. Fed. R. Civ. P. 11(c). Unless the court orders Rule 11 sanctions sua sponte, an affected party must first serve its Rule 11 motion on the violator. Fed. R. Civ. P. 11 (c)(1)(A). If the violating party does not withdraw or correct its offending paper within twenty-one days, the affected party may then file its rule motion with the court. Id.

The standard for determining whether a pleading, motion or other paper is either frivolous or interposed for an improper purpose is one of objective reasonableness at the time of the attorney's signature. Conn v. CSO Borjorquez, 967 F.2d 1418, 1421 (9th Cir. 1992) (citing Woodrum v. Woodward County Okla., 866 F.2d 1121, 1127 (9th Cir. 1989)); Golden Eagle Dist. Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir. 1986). In assessing whether the filing of a particular paper was frivolous under Rule 11, the court should not consider the ultimate failure on

1  the merits or the subjective bad faith of the signer, but rather whether the position taken was "legally
2  unreasonable" or "without factual foundation." Zalvidar v. City of Los Angeles, 780 F.2d 823, 831
3  (9th Cir. 1986).

DISCUSSION

I.    Exhaustion of State Remedies

To determine whether Bush has exhausted his state remedies with respect to the claims he now seeks to bring before this court, it is first necessary to clearly define his present claim and then to evaluate whether Bush provided the California courts with a fair opportunity to rule on the merits of his present claim. In Bush's current petition, he affirms that "[t]his case presents a very narrow issue of whether an inmate who receives a parole date, but is held in custody beyond the end of his or her set term, is entitled to receive credits against the parole period for the excess time spent in prison." "[T]he issue for resolution herein is simply whether those excess credits apply to reduce the parole period." Pet. at 2:13–21. Bush asks this court to hold that the Board violated his due process and equal protection rights, state law, and the Board's own regulations by failing to properly account for his custody credits. Id. at 4:1–9, 20–22. Bush further asks this court to order his release on his own recognizance and to terminate his parole as a consequence of the Board's alleged failure. Id. at 8:20–23.

Bush bears the burden of establishing that the exhaustion requirement is met. Darr v. Burford, 339 U.S. 200, 218–19 (1950). However, he has not submitted to this court any copy of his previous petitions to the Marin County Superior Court, First Appellate Division Court of Appeal, or California Supreme Court. He has merely provided the orders of those courts, which deny his petitions and provide, to varying degrees, some characterization of Bush's claims. See Pet.'s App. Exh. E–G. This court must therefore rely in part on the description of Bush's claims by the California courts to assist in the interpretation of those claims.

Bush's present round of petitioning the California courts began with his petition to the Marin County Superior Court which was granted on March 15, 2005. It was this order which Bush moved

9

1  to modify on or about June 1, 2005.  At that time, Bush asked the superior court for a determination
2  on the "very narrow issue of the limits of the governor's power to review non-murder parole grants."
3  Pet.'s App. Exh. E at 2.  The question of the scope of the governor's power to review parole is
4  plainly distinct from the question of whether excess custody credits apply to reduce a parole period,
5  and the parties do not dispute that raising the former is insufficient to exhaust claims related to the
6  latter.

7        In an earlier petition, though, Bush argued that his time in custody "exceeded the time for the
8  offense and the maximum period of parole."  Id. at 3.  This earlier petition, case number
9  SC133488A, is identified by the superior court as arising out of one of Bush's "prior unsuccessful
10 Board hearing[s]."  Id. at 2.  The superior court indicated that the earlier petition was filed in
11 Monterey County Superior Court in December 2003 and was transferred to Marin County Superior
12 Court in January 2004.  Id. at 2–3.  The parties agree that this earlier petition and the petition which
13 was granted on March 15, 2005, case number SC139055A, were both pending in Marin County
14 Superior Court simultaneously.  See Pet.'s Opp. at 3; Resp't.'s Reply at 3.  Ylst claims that the
15 superior court granted Bush's later petition and that Bush's earlier petition remains open.  Reply to
16 Pet.'s Opp. at 3.  Bush concedes that it was this earlier petition that contained the claims which he
17 now argues exhaust his current claims but argues that the superior court directly addressed the merits
18 of the earlier petition's claims in its order.  Pet.'s Opp.at 3–4.  Bush is silent as to whether his earlier
19 petition remains open in the superior court.  Bush's position that he has exhausted all available state
20 remedies therefore rests on whether his inclusion of an argument in a separate petition, filed several
21 years previously, and which has not been provided to this court, can be invoked in a later round of
22 petitioning to establish exhaustion.  This court holds that it cannot.

23       At the time the earlier petition was filed, December 2003, Bush was still incarcerated and
24 had yet to appear for his July 27, 2004 parole eligibility hearing with the Board.  See Bush v. Solis,
25 No. C 04-1823 MHP, 2005 WL 1592425 at *2 (N.D. Cal. July 1, 2005) (Patel, J.).  Since it was at
26 this hearing that the Board made the very determinations which Bush contests in his present habeas
27 petition, it is difficult, if not impossible, to see how he can validly claim that his argument made in
28

10

the prayer of his December 2003 petition would have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," O'Sullivan, 526 U.S. at 845, with respect to issues specifically arising from his July 27, 2004 Board hearing.

Since 1999 Bush has contested his continued detention as constituting a violation of his federal constitutional rights. In his 1999 petition Bush raised the claim that the Board violated his due process rights by applying California Penal Code section 3041(a) arbitrarily and unreasonably. Bush v. Solis, 2005 WL 1592425 at *1. Section 3041(a) mandates that the Board hold parole eligibility hearings, document conduct pertaining to the availability of post-conviction credit, and set parole release dates in a uniform manner. But Bush's current petition raises claims under California Penal Code sections 1168, 2900, 2900.5, 3000, and 3041(b) and California Code of Regulations section 2345. Bush has provided this court with no evidence that he presented the California courts with any claims arising under these statutes nor with any claims arising from the operative facts associated with his July 27, 2004 parole eligibility hearing.

Sweet v. Cupp, 640 F.2d 233, 236 (9th Cir. 1981), established that the exhaustion requirement may be avoided by showing that it would be futile to pursue one's claims in state court in light of the prevailing decisions of that state's highest court. It did not establish that exhaustion is unnecessary upon a showing that it would be futile to pursue one's claims in state court in light of an unencouraging attitude, environment, or because of the prevailing decisions encountered in a state trial court. Bush has demonstrated no evidence of futility apart from his assertion that the superior court ruled on the merits of his case as it stood at that time. Pet.'s Opp. at 2:6–9, 4:14–18.

Bush, the nonmoving party here, has made no allegations of material fact which, taken most favorably to him, could establish that he is entitled to relief. Ylst's motion to dismiss is therefore GRANTED.

## II. Sanctions

Sanctions are not appropriate in this case for two reasons. First, Ylst was not afforded notice as required by the safe harbor provision of Rule 11, which requires a party requesting sanctions to first serve its Rule 11 motion on the alleged violator, and then to provide twenty-one days for the alleged violator to withdraw or correct its offending paper before filing its motion with the court. Fed. R. Civ. P. 11 (c)(1)(A).

Second, there is no "blanket bar against motions to dismiss" filed in response to habeas petitions. White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989). In this court's order to show cause, it commanded Ylst to file "no later than fourteen (14) days after the date of this order, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be issued." Bush v. Ylst, Order to Show Cause, Docket No. C 06-7255 MHP (Feb. 15, 2007) at 10. Rule 5 explains what an answer must contain: "The answer must address the allegations in the petition. In addition, it must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations." Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. But the Ninth Circuit has held that Rule 4 of the Rules Governing Section 2254 Cases allows a judge who has issued an order to show cause to accept "an answer *or other pleading* . . . or to take such other action as the judge deems appropriate." See White, 874 F.2d at 602 ("Clearly, the rule allows for a response other than a formal answer meeting the dictates of Rule 5.") (emphasis in original). The Ninth Circuit has also observed that "responding to a habeas petition with a motion to dismiss is common practice." White, 874 F.2d at 603 (citing Murray v. Carrier, 477 U.S. 478 (1986)).

Finally, given that the court finds Ylst's contention that Bush failed to exhaust his state remedies to have merit, the court does not agree with Bush's contention that Ylst's motion was "legally unreasonable" or "without factual foundation." The court therefore finds that Ylst was entitled to file a motion to dismiss in lieu of an answer. Bush's request for the issuance of sanctions is DENIED.

CONCLUSION

For the foregoing reasons, Ylst's motion to dismiss is GRANTED. Bush's request for the issuance of sanctions is DENIED.

IT IS SO ORDERED.

Dated: April 25, 2007

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

## **ENDNOTES**

1. Unless otherwise indicated, all facts are taken from the order issued in an earlier case brought by petitioner, Bush v. Solis, No. C 04-1823 MHP, 2005 WL 1592425 (N.D. Cal. July 1, 2005).

2. The record does not reveal the exact date Bush filed this motion, although it seems to be around June 1, 2005, as the superior court order describes it being filed two-and-one-half months following Bush's release on March 19, 2005.

3. In Bush's petition, filed November 20, 2006, he notes that he "has only five . . . months left to serve." Pet. at 8:9–10.